Gonzales v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-043-CR

        MERLO LUANA GONZALES,
                                                                                               Appellant
        v.

        THE STATE OF TEXAS,
                                                                                               Appellee
 

From the 220th District Court
Bosque County, Texas
Trial Court # 95-05-11842 BCCR
                                                                                                    

O P I N I O N
                                                                                                    

          A jury convicted the appellant, Merlo Luana Gonzales, of burglary of a habitation with
intent to commit aggravated assault and assessed punishment at a probated five-year term of
confinement in the Texas Department of Criminal Justice-Institutional Division. Tex. Penal
Code Ann. § 30.02 (Vernon 1994). Gonzales raises three points of error: (1) the evidence is
legally insufficient to support the intent element of the offense; (2) the evidence is factually
insufficient to support the intent element of the offense; and (3) the court erred by failing to charge
the jury on the lesser-included offense of criminal trespass. We overrule all of Gonzales’ points
of error and affirm the judgment.
I
          In Gonzales’ first point, she asserts that the evidence in the record is legally insufficient
to support the intent element of the offense. Gonzales argues that in analyzing whether the
evidence is legally sufficient to uphold her conviction it should be measured directly against the
charge given to the jury. Walker v. State, 823 S.W.2d 247, 248-49 (Tex. Crim. App. 1991). The
jury charge read in part:
In this case, the indictment having charged that the burglarious entry, if any, was made
with the intent to commit the crime of aggravated assault, a felony. Before you would be
warranted in finding defendant guilty, you must be satisfied from the evidence beyond a
reasonable doubt that the entry, if any, was so made, without the effective consent of the
owner, with the intent to commit the specific crime of aggravated assault.
 
A person commits an assault if the person intentionally or knowingly causes bodily injury
to another. A person commits aggravated assault if the person commits an assault, but
commits the assault with a deadly weapon.
 
. . .
 
Now if you find from the evidence beyond a reasonable doubt that on or about the 11th day
of March, 1995 in Bosque County, Texas, the defendant, M[e]rlo Luana Gonzales, did
then and there, with intent to commit aggravated assault, intentionally or knowingly enter
a habitation, without the effective consent of Maranda Gipson, the owner thereof, and
defendant did then and there use or exhibit a deadly weapon, to-wit: a telephone, which
in the manner of its use and intended use was capable of causing death or serious bodily
injury, then you will find the defendant guilty as charged.
 
Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof,
you will acquit the defendant. 

(Emphasis added.)
          Gonzales argues that the jury charge limited the definition of aggravated assault with a
deadly weapon to require the jury to find that she had the specific intent to assault the victim with
a telephone at the time she entered the habitation. Further, Gonzales asserts that because the State
did not (and could not) prove her intent to use the telephone as a deadly weapon at the time she
entered the habitation, she is entitled to an acquittal of this offense.
          It is true that the court's charge was not as precise as it could have been. However,
Gonzales’ reading is not the only logical reading of the charge. Where a jury charge is
ambiguous, the appellate court should use "common sense" in its analysis in determining if there
is a "reasonable likelihood" that a jury was mislead. Mireles v. State, 901 S.W.2d 458, 460 (Tex.
Crim. App. 1995) (citing Boyde v. California, 494 U.S. 370, 380-83, 110 S.Ct. 1190, 1198-99
(1990)). Furthermore, the charge should be examined in the entire context of the trial and not in
isolation. Id. 
          The main thrust of Gonzales’ argument centers around the language in the charge that
questions whether Gonzales, "did then and there use or exhibit a deadly weapon, to-wit: a
telephone, which in the manner of its use was capable of causing serious bodily injury." Gonzales
insists that this requires the jury to find that she had the intent to use a telephone as a deadly
weapon "then and there" when she entered the habitation. However, when viewed in the context
of the whole charge and the trial, this language could rationally be seen as simply demanding that
Gonzales have the intent to commit aggravated assault "then and there" on the day of the crime,
not when she entered the habitation. The charge effectively asked the jury to answer two
questions: (1) whether Gonzales had the intent to commit aggravated assault when she entered the
habitation uninvited; and (2) whether Gonzales did use or exhibit a deadly weapon during the
episode. We now turn to measure the legal sufficiency of the evidence against this reading of the
charge.
          The standard for legal sufficiency is "whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt." Clewis v. State, 922 S.W.2d 126, 132 (Tex. Crim. App.
1996) (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979)). This standard is the
minimum standard for sustaining a conviction under the Due Process Clause of the Fourteenth
Amendment. Id. at 132. This standard is an analytical tool used to determine whether there is
a fact issue at all. Id. at 133. It "gives full play to the responsibility of the trier of fact fairly to
resolve conflicts in the testimony, to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts." Id. (quoting Jackson, 443 U.S.
at 319, 99 S.Ct. at 2789). 
          The evidence, viewed in the light most favorable to the prosecution, is that on March 11,
1995, the victim, Maranda Gipson, was living at a friend's habitation. At approximately eleven
o’clock p.m., Gipson was asleep in bed when she heard a knock at the door. There was testimony
that Gonzales and two other individuals had planned to visit Gipson to "kick her ass." Gipson
answered the knock and found Gonzales and another girl at the door. After trying to pull Gipson
outside, Gonzales pushed Gipson into a cinder block wall, where Gipson struck her head, causing
heavy bleeding, and momentary unconsciousness. After quickly awakening, Gipson stood up and
Gonzales then pushed her into a dresser in the bedroom, which made Gipson once again fall to the
floor. Once in the bedroom, Gonzales started hitting Gipson in the face with her fists. After
pushing Gipson on the bed, Gonzales picked up a telephone, receiver and base, and began hitting
Gipson in the face and eyes with it more than ten times. As this beating was taking place, Gonzales
told Gipson not to talk about Gonzales’ boyfriend. Then Gonzales told Gipson if she told the
police about the incident she would kill her. Gonzales then got up and left. Later the owner of
the habitation came home and took Gipson to the Bosque County Sheriff’s Office. After pictures
were taken, a statement was given, and Gipson was taken to a hospital. Several witnesses,
including Gipson, stated that Gonzales was not invited into the habitation. 
          In measuring this evidence against the charge, we hold that it is legally sufficient. First,
the evidence supports the conclusion that Gonzales did have the intent to commit aggravated
assault with a deadly weapon before she entered the habitation. There was testimony that
Gonzales planned to "kick her [Gipson’s] ass" before they arrived at the habitation. Further, when
Gonzales could not pull Gipson out of the habitation she pushed her into a cinder block wall. 
When Gipson hit the wall she fell unconscious. A wall or floor can be a deadly weapon. Stanul
v. State, 870 S.W.2d 329, 333 (Tex. App.—Austin 1994, pet. dism’d). At the least, a jury could
reasonably believe from the testimony and nature of the crime that Gonzales had the intent when
she entered the habitation to pick up whatever deadly or potentially deadly weapon came to hand.


 
Thus, the jury could have rationally believed beyond a reasonable doubt that Gonzales had the
intent to use a deadly weapon when she entered the habitation. 
          Second, the evidence supports the conclusion that Gonzales did use or exhibit a deadly
weapon during the episode. There was evidence that Gonzales both pushed Gipson into a cinder
block wall with enough force to knock Gipson unconscious and that later Gonzales hit Gipson in
the face and head over ten times with a blunt instrument, the telephone receiver and base. Thus,
a jury could have rationally believed beyond a reasonable doubt that Gonzales did use or exhibit
a deadly weapon during the criminal episode. Gonzales’ first point of error is overruled.
II
          Gonzales’ second point of error is that the evidence is factually insufficient to support the
intent element of the offense. Gonzales points to two areas where the evidence is factually
insufficient: (1) that the telephone was not a deadly weapon in the manner and means of its use;
and (2) that Gonzales did not intend, when she entered the habitation, to use the telephone as a
deadly weapon in the assault.
          In conducting a factual sufficiency review, the appellate court ”views all the evidence
without the prism of ‘in the light most favorable to the prosecution.’ . . . [and] set[s] aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.‟ Clewis, 922 S.W.2d at 129 (citing Stone v. State, 823 S.W.2d 375, 381 (Tex.
App.—Austin 1992, pet. ref'd untimely filed)). 
          Turning to the assertions of Gonzales we hold that the evidence is factually sufficient to
support the judgment. First, Gonzales asserts that the telephone was not a deadly weapon in the
manner and means of its use. The evidence at trial could reasonably lead a jury to decide that the
telephone in the manner and means of its use could cause serious bodily injury or death. See
Desselles v. State, 934 S.W.2d 874, 878 (Tex. App.—Waco 1996, no pet.). The jury heard
evidence that Gipson was hit in the head more than ten times with the telephone receiver and base. 
A physician who testified at the trial, as well as two sheriff’s deputies, stated that the telephone
could be a deadly weapon under the facts of this case. Actual infliction of serious bodily injury
is not required for a weapon to be deadly, only that the weapon is capable of causing serious
bodily injury in the manner and means of its intended use. Hill v. State, 913 S.W.2d 581 (Tex.
Crim. App. 1996). Thus, by examining the evidence impartially we think that the jury has
reasonably concluded that the telephone was a deadly weapon. This conclusion is not clearly
wrong or unjust.
          Gonzales’ second assertion as to factual insufficiency is that Gonzales could not have had
the intent to use the telephone as a deadly weapon when she entered the habitation. Even if we
determined the evidence was not factually sufficient to support a conclusion that Gonzales had the
intent to use the telephone as a deadly weapon when she entered the habitation, this determination
would not require us to remand the case for a new trial. As we noted in section I of this opinion,
the jury charge only required that the jury find that Gonzales had the intent to use a deadly weapon
when she entered the habitation, not the specific weapon of the telephone. Thus, we overrule
Gonzales’ second point of error and determine that the evidence was factually sufficient to support
the judgment.
III
          Gonzales’ third point of error is that the court erred by failing to include in its
guilt/innocence charge the lesser-included offense of criminal trespass. Before the charge was
given to the jury, Gonzales objected to it because it failed to include the lesser-included offense
of criminal trespass. 
In determining whether appellant is entitled to a charge on a lesser-included offense, we
must consider all of the evidence introduced at trial, whether produced by the State or the
defendant. This Court uses a two-pronged test in its review. First, the lesser-included
offense must be included within the proof necessary to establish the offense charged. 
Second, there must be some evidence in the record that if the defendant is guilty, he is
guilty only of the lesser-included offense. The credibility of the evidence and whether it
conflicts with other evidence or is controverted may not be considered in determining
whether an instruction on a lesser-included offense should be given.

Penry v. State, 903 S.W.2d 715, 755 (Tex. Crim. App. 1995) (citations omitted).

          The first prong of this test is conceded by the State; the charge of criminal trespass is
included within the proof necessary to establish the offense of burglary of a habitation.
          The second prong of the test is where Gonzales and the State differ in opinion. To require
that a lesser-included offense be included in the charge there must be some evidence that would
negate the element which raises the lesser offense to the greater. Moss v. State, 919 S.W.2d 907,
909 (Tex. App.—Fort Worth 1996, no pet.). This evidence must be "directly germane to a lesser-included offense for the factfinder to consider before an instruction of the lesser-included offense
is warranted." Jones v. State, 921 S.W.2d 361, 364 (Tex. App.—Houston [1st Dist.] 1996, no
pet.). The element which raises criminal trespass to burglary of a habitation with the intent to
commit aggravated assault is that of the intention to commit aggravated assault. The intent
necessary for criminal trespass is that of the Penal Code's default culpable state of intent,
knowledge, or recklessness. See Tex. Penal Code Ann. § 30.05 (Vernon 1994) (criminal
trespass); Tex. Penal Code Ann. § 6.02 (Vernon 1994) (default requirement of culpability). 
          Gonzales asserts that the evidence produced by her sole witness negates the intent required
by the charge of burglary of a habitation with the intent to commit aggravated assault. This
witness, Lisa Leyendecker, testified that Gonzales went to Gipson’s residence to ask her questions
and nothing more. Further the witness testified that, after Gonzales attempted to ask questions,
Gipson was the one to first attempt an assault. According to Leyendecker, Gonzales was just
trying to defend herself from Gipson’s attack when it got carried into the habitation. Gonzales
argues that, based on Leyendecker’s testimony, there was some evidence that at the time of the
offense Gonzales only possessed an intent to commit a criminal trespass and not a burglary of a
habitation.
          Leyendecker's testimony, however, presented no evidence that Gonzales intended only to
commit a criminal trespass. Leyendecker testified that, on the way to Gipson's house, Gonzales'
intention was only to speak with Gipson, but then, once their conversation was underway, the sole
reason Gonzales entered Gipson's house was so that she could defend herself from Gipson's
attack. Neither scenario raises any evidence of an intention on the part of Gonzales to commit a
criminal trespass. Under the former, Gonzales had no intention even to enter Gipson's house, and
under the latter, Gonzales' entry into Gipson's house was a mere accident as she was attempting
to defend herself from Gipson's assault. Therefore, as no evidence was adduced of an intention
on the part of Gonzales to commit a criminal trespass, the trial court did not err in refusing to
issue a charge on the lesser-included offense of criminal trespass.
          Gonzales also asserts that the charge limited the definition of aggravated assault to require
that she have the intent to use a telephone as a deadly weapon when she entered the habitation to
be convicted of burglary of a habitation with the intent to commit aggravated assault. Gonzales
further asserts that since the jury could have believed that the telephone was not a deadly weapon,
the element of intent to commit an aggravated assault would have been eliminated. Following this
reasoning the court would have to include in the charge the lesser-included crime of criminal
trespass that did not require intent to commit an aggravated assault. As we held earlier in this
opinion, the charge did not require a finding that Gonzales had the intent to use the telephone
when she entered the habitation, only that she had the intent to use a deadly weapon when she
entered the habitation. Thus, Gonzales’ argument is without merit. We overrule Gonzales’ third
point of error.
          The judgment is affirmed. 
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed March 31, 1997
Do not publish